## George Arnold v. M. E. Coleman.

1. EXEMPTIONS—*When a Wife is Not the Head of the Family.*— Where the husband is an able-bodied man, twenty-four years old, and lives with his wife and child, apparently in the possession of all his faculties, farming her land, and receiving one-half the crops and sharing the losses, the fact that he does what he pleases with what he receives, or that she pays her own expenses when she travels, or that she owns the property and hires him to look after it, or all combined, do not destroy his legal relation§ as "head of the family," and do not show the wife to be the "head of the family," as that expression is used in the exemption act. ·

2. INSTRUCTIONS—*As to When a Wife is the Head of the Family.*— As to what in law constitutes the "head of the family," is a mixed question of law and fact; the court should instruct the jury as to what is necessary to constitute a wife the head of the family when her husband is living with her and his family.

3. SAME—*Should be Framed with Reference to the Circumstances of the Case.*—Instructions should be framed with reference to the circumstances of the case on trial and not expressed in abstract and general terms, where such terms may mislead instead of enlightening the jury.

Replevin.—Error to the Circuit Court of Wabash County; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the August term, 1899. Reversed and remanded. Opinion filed March 16, 1900.

Statement.—Replevin by Mrs. Frank E. Coleman, defendant in error, wife of Frank Coleman, against plaintiff in error, a constable, to recover possession of one Jersey cow and calf, one Buckeye wheat drill and one Deering mower, the property of defendant in error, of the value of $75, taken on execution by said constable to satisfy a judgment against defendant in error.

The declaration charges in the usual form, wrongfully taking and wrongfully detaining the property. The defendant pleaded *non cepit* and *non detinet*, and a special plea that the property was taken and detained by virtue of an execution against the goods and chattels of the plaintiff, and that the property was liable to execution.

The jury found the defendant guilty and that the plaintiff, Mrs. Coleman, was entitled to the property.

Judgment on verdict.

Frank Coleman, the husband of defendant in error, for some time prior to 1897, was engaged in the restaurant and confectionery business in Mt. Carmel, and lived with his wife in rooms on the second floor of the building in which the business was conducted. In January, 1897, the business and property connected with it was transferred to his wife, defendant in error, and from that date was carried on in her name, he working for her and acting as her agent at a salary of $10 a week, with board and lodging. In May, 1898, Mrs. Coleman traded the stock of goods, etc., in the restaurant for personal property on a farm, leasing the farm in her own name, as she testifies.

The point to be decided in this case is, was defendant in error entitled in law to claim the benefit of the exemption act as the head of the family. If she was, there is no error in the judgment. If she was not, there is error, and the judgment must be reversed.

The substance of the testimony of Mrs. Coleman is as follows, and presents the facts to be considered in deciding the case :

" My name is M. Coleman, and I am the plaintiff in this suit. I have one child eleven months old. Have a husband whose name is Frank Coleman. I was engaged in farming and owned the property described in the schedule given to the defendant constable. I raised on the farm, corn, wheat and oats and garden vegetables. I direct and control the business. I rent the farm and lease is made to me. Was living on the farm one month when execution was served. My husband, Frank Coleman, owned no property, and had no interest in this property of mine.

Cross-examination :

I traded off the stock of goods which I had at the time that I moved to the country. My husband attended to my business at that time. Transferred the stock of goods May 27, 1898. Moved immediately to the country. Traded for personal property which is out on the farm. It consists of the property named in the schedule. While living in Mount Carmel lived over the restaurant, and carried on restaurant business and confectionery business. Carried on business over a year in my name. My husband attended to the business under my direction. He did the

buying, but did not always consult me. I paid my husband a salary—ten dollars per week—all the time he ran the restaurant. Had a verbal contract with him. I pay him on the farm one-half the profits. Made contract when I went on the farm—a written contract. While I was running the restaurant, goods were paid for by check and by cash. I signed the checks—all of them—in the business contracted by me. He paid checks, but I signed them, or accepted the receipts. Gave money to my husband to pay the rent, and he brought receipts. He accounted to me—turned over all the cash to me. Had no insurance on stock. I saw that taxes were paid, and receipts were given to me. Provisions for living were bought out of money coming into the restaurant. I saw the purchasing done, and always directed my husband what to do. He was to have his board in addition to his salary. He gets half of the products of farm and board and lodging. He shares his proportion of all losses on the farm. What he does with what he gets is his private affair. I make no inquiry about it. I have one child and buy all its clothing. Frank buys his own clothes with his own money. He clothes himself, and I do the same; he buys nothing for me, and pays no expenses for me. When I travel I pay my own expenses, and never take him along. Frank personally conducts the farm, and we raise wheat, corn and oats. I suppose I have the say about what land shall be farmed. He asks me about what land shall be put in wheat and oats, and I give him orders and he obeys my orders. He buys the machinery under my directions. My husband is an able-bodied man. His age is twenty-four years. He sells the products—takes them to market under my direction. It is all done under my direction."

GREEN & RISLEY, attorneys for plaintiff in error.

S. Z. LANDES, attorney for defendant in error.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The testimony of defendant in error does not show her to be the head of the family, as that expression is used in the exemption act. Her husband is an able-bodied man, twenty-four years old, living with his wife and child, apparently

Arnold v. Coleman.

in the possession of all his faculties, farming her land, and
receiving therefor one-half the crops and sharing the losses.
The fact that he does what he pleases with what he receives,
or that she pays her own expenses when she travels, or that
she owns the property and hires him to look after it, or all
combined, do not destroy his legal relation as "head of the
family." If he were insane, or in the penitentiary, or had
abandoned and deserted his wife, a different condition
would be presented. It is said in Clinton v. Kidwell, 82
Ill. 429, " Ordinarily, at least, where the wife lives with the
husband, he must be regarded as the head of the family.
If, in fact, he has not control of the family, and is not the
head thereof, such fact must be shown by proof." There
is no proof in the case at bar that Frank Coleman has not
control of the family. Nor is the case of Temple v. Freed,
21 Ill. App. 239, inconsistent with this view. In it, the
husband had been insane, and had been temporarily con-
fined in the jail and hospital, but at the period in question,
was so far recovered as to be living at home with his wife
and children. The court says in its opinion:

" Substantially, however, he did nothing toward his own
support, or that of the family, while appellee, with the
assistance of her children, carried on the farm upon which
they lived, herself plowing corn, raking and binding wheat,
and taking actual control and management of the farm,
buying the provisions, and selling the produce raised upon
it, thereby, as we think, making herself the head of the
family."

The facts thus stated are entirely different from the facts
in the case at bar. Farwell v. Martin, 65 Ill. App. 57, is
more in point. In this latter case it is said:

" He was in ordinary health, of sound mind, and was
directing all his time to the care of the family and manage-
ment of the grocery business which was conducted in her
name, with money which was hers, and as may be fully
conceded, that business was in all respects subject to her
authority and control. But this did not divest him of his
legal function as the head of the family."

The fact in the present case that the husband does what
ne pleases with the half of the crops that he receives as

salary, does not prove that his receipts are not used for the benefit of his family. He may be paying his debts with them, which would be indirectly benefiting his family. He may be buying life insurance for their benefit, or loaning, investing, or saving money for them.

The seventh instruction given for defendant in error is as follows :

" The court instructs the jury that if you believe, from the weight of the evidence, that the plaintiff, at the time of the date, and also at the time of the levy of the execution by the defendant, Arnold, was at the time the head of a family residing with the same, and owned all the property levied on, and by her taken under the writ of replevin issued in his case, and that she, at the dates above stated, had exclusive charge of, and managed and controlled the earnings and productions of the family, and the financial and business interests necessary to support and keep it together, then she is entitled to the benefit of the exemption given to the head of the family."

This instruction should not have been given for two reasons : First, it leaves to the jury to decide from the evidence, whether or not defendant in error was the head of the family, without any instruction as to what, in law, constitutes the head of the family. Being a mixed question of law and fact, the court should have told the jury what was necessary to constitute a wife the head of the family when her husband was living with his family. Second, the facts do not warrant the instruction. Defendant by her own testimony, shows that she did not have " exclusive charge of and manage and control the earnings and productions of the family." Her husband was part of the family, and he received and controlled one-half of the earnings of the family, that is, one-half of the crops gathered from the farm planted and tilled by him. " Instructions should be framed with reference to the circumstances of the case on trial and not be expressed in abstract and general terms, where such terms may mislead instead of enlightening a jury." C. & A. R. Co. v. Utley, 38 Ill. 411.

Judgment reversed and case remanded.